DAMPSKIBSELSKABET DANNEBROG v. RANDALL et al.

(District Court, D. Maryland. November 2, 1914.)

SHIPPING (§ 45*)—CONSTRUCTION OF CHARTER PARTY—LOADING CARGO—COST OF SEWING BAGS OF GRAIN.

   Under a charter party which required the ship to load a·cargo of grain "in shippers' bags," where wheat was delivered on board from elevator · chutes and was there placed in bags furnished by the shippers, which were closed by sewing before they could be loaded, the cost of sewing the bags was a charge against the charterer.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 177–181; Dec. Dig. § 45.*]

In Admiralty. Suit by the Dampskibselskabet Dannebrog, owner of the steamship Lejre, against Blanchard Randall and others, doing business as Gill & Fisher. Decree for libelant.

Convers & Kirlin, of New York City, and Ritchie, Janney, Griswold & Hamilton, of Baltimore, Md. (John M. Woolsey, of New York City, and Robertson Griswold, of Baltimore, Md., of counsel), for libelant.

Brown, Marshall, Brune & Thomas, of Baltimore, Md., and Daniel R. Randall, of Annapolis, Md., for respondents.

ROSE, District Judge. The libelant, a Danish corporation, is the owner of the steamship Lejre. The respondents are a Baltimore firm engaged in the business of exporting cereals. On October 15, 1913, the libelant, through a Baltimore shipbroker, chartered the ship to the respondents to carry 18,000 quarters of grain (as it turned out, wheat) in shippers' bags to Santos. The wheat was delivered on board from the elevator chutes. Bags furnished by the respondents were so placed as to receive it. The mouths of these bags were closed by sewing. The handling of the bags necessary to get the wheat into them and then sewing them cost half a cent a bushel, or $722.40 in all, the bulk of which expense was for the sewing. The controversy is as to whether the libelant or the respondents should pay this amount.

By the terms of the charter party, the cargo was to be brought and taken from alongside at merchants' risk and expense. The vessel was to load under inspection of underwriters' agents at her expense. The ship says that she was to load "from said charterers or their agents a full and complete cargo * * * of wheat * * * in shippers' bags." It claims that it was the shippers' duty to deliver to it the bags with the wheat in them in such condition that it could perform its obligation to load them. The shippers contend that, when they provided the bags and put the wheat on board the ship, they did all that they were required to do.

It is admitted that the decided cases throw little or no light on the controversy. There was a time when a good deal of grain was shipped from Baltimore in bags. Of late years such shipments have been extremely rare. For 12 or 15 years the cargo in question is the second

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of that kind which has gone out of Baltimore. None of the witnesses can recall what was the custom of the port as to the payment of the sewing charge, or whether or not it was formerly usual to make express provision concerning it in the charter parties. While much the larger part of the ordinary grain cargoes are now shipped in bulk, the underwriters require a portion of each cargo to be in bags, which are stowed so as to keep the grain in bulk from dangerously shifting. The work of sewing the bags used for such portion of the cargo is treated as a part of the stowage of the cargo, and is paid for by whomever in any particular case is by the terms of the contract required to bear the expense of loading.

The respondents offer testimony to show the construction which the parties have put upon the words of the charter party before its execution or delivery. The libelant objected to the admissibility of such evidence as tending to vary or contradict the written word. The testimony was taken subject to a subsequent decision as to its legal effect.

Two witnesses on this point were examined, both on behalf of the respondents. One was the shipbroker, who, acting for the libelant, had on its behalf chartered the ship to respondents. He testified that he had heard the respondents were in the market for a ship. He offered them two—the Lejre and another. The other was a little larger, and in that respect was better suited to respondents' needs. It, however, would not be as promptly available. The terms of the charter he was authorized to offer for it would clearly put the expense of the sewing upon the respondents. He cabled to the libelant an offer of the respondents for the ship, stating that the cargo was to be in shippers' bags. Some cablegrams followed as to price and other details, but nothing was said in any of them as to the question now in controversy. It was, however, according to his testimony, discussed between himself and the respondents, or the one of them who in fact conducted the negotiations. The shipbroker says that he expressed his personal opinion that a charter party worded as the one in suit would put the expense of sewing upon the ship, but he adds that he told respondents that he did not know whether the libelant would think so, and he further communicated to the respondents the opinion of another experienced Baltimore shipbroker that under such a charter party they and not the ship would have to pay for the sewing, and, according to him, after this the respondents decided to accept the charter, and to take their chances as to the construction which would ultimately be put upon it.

The member of the respondents' firm who testifies said he relied upon the shipbroker's statement of his opinion as to the construction of the charter party. The broker was the libelant's agent, and the respondents assumed that he spoke for it. According to the witness' recollection, the doubts of the shipbroker were not expressed to him until after the charter party was signed.

The discrepancy in the testimony was what might naturally be expected. It affords a striking illustration of one of the reasons why the rule forbidding parol modifications should in most cases be adhered to. Both the witnesses are testifying to their best recollection. Whether the testimony is admissible or not, it is too contradictory and un-

certain to throw any light on the interpretation of the contract. That must be construed as it is written.

When the ship arrived, the captain engaged the stevedore. Shortly after loading began, the captain told the stevedore that he must look to the respondents for the cost of the sewing. The stevedore said he would hold the ship for it. The captain notified the respondents that he expected them to pay. When they would not, he paid under protest.

What is the proper construction of the charter party is very doubtful. Upon the best thought I can give, it seems to me that the libelant has a little the better of the argument. The grain was to be delivered on board the ship fit for loading. It could not be loaded until the bags were sewed. It is true that, where the underwriters require in shipments of grain in bulk a portion of the cargo to be put in bags, the custom of the port requires that the shippers shall pay the expense of sewing unless otherwise provided; but that is because in such cases the putting in bags is required in order to make good stowage, and the cost of so doing is part of the expense of stowing.

The question having been in the minds of the respondents and of the libelant's agent before the charter party was made, it is to be regretted that one or the other of them did not insist on inserting words in it which would have made this dispute, with its waste of time and money, impossible.

The libelant may have a decree.